**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**NOLA VENTURES, LLC, et al.**                    **CIVIL ACTION**

**VERSUS**                                        **NO. 12-1026**
                                                      **c/w 12-1834**
                                                      **REF: 12-1834**

**UPSHAW INSURANCE AGENCY, INC., et al.**         **SECTION: "G"(3)**

**ORDER AND REASONS**

Before the Court is Defendant Lexington Insurance Company's ("Lexington") Motion to

Dismiss,[1] wherein Lexington seeks the dismissal of all claims against it by Plaintiffs NOLA

Ventures, LLC, NOLA Restaurant Group, LLC, and Critical Mass Holdings, LLC (collectively,

"Plaintiffs"). After reviewing the complaint, the pending motion, the memorandum in support, the

opposition, the reply, the record, and the applicable law, the Court will deny the pending motion.

**I. Background**

*A. Factual Background*

On March 23, 2011, Lexington issued a policy of insurance to NOLA Ventures, covering all

risks of direct physical loss or damage for "Plaintiff's Real and Personal Property, Signs, and

Business Income and Extra Expense."[2] NOLA Restaurant Group and Critical Mass Holdings are

"affiliates" of NOLA Ventures and are additional insureds under the policy with Lexington.[3]

---

[1]  Rec. Doc. 23. All citations to the record will be in reference to the consolidated master docket sheet unless otherwise specified.

[2]  Rec. Doc. 1 at ¶ 4. This citation references the separate docket for Civil Action 12-1834.

[3]  *Id.*

NOLA Ventures is an "Arby's Roast Beef" restaurant franchisee and owner of ongoing businesses at several locations.[4] Critical Mass Holdings, LLC is the owner of certain land and buildings on which some of these restaurants operate.[5] NOLA Restaurant Group, LLC, manages all of NOLA Ventures restaurants, including two that operated in Joplin, Missouri.[6]

On May 22, 2011, a severe thunderstorm destroyed both of Plaintiffs' Joplin, Missouri restaurants. These locations have not been rebuilt and their operation has not resumed.[7] After the storm, NOLA Ventures informed Lexington of the loss and provided documentation to substantiate the losses incurred.[8] Plaintiffs claim that despite having sufficient information to conclude the losses were over and above the policy limits, Lexington failed to timely investigate and tender full insurance proceeds to the insured within thirty days as required by law.[9]

Plaintiffs state in the complaint that Lexington ultimately made a tender of policy limits in April 2012, "approximately 11 months after the loss date."[10] Plaintiffs claim that "[t]he vexatious delay of insurance payments, the loss of income and cash flow impaired and damaged the ongoing operations of plaintiffs and resulted in the national franchisor, Arby's, requiring plaintiffs to relinquish the two Arby's franchises for the Joplin, Missouri restaurants."[11]

---

[4] *Id.* at ¶ 5.

[5] *Id.* at ¶ 6.

[6] *Id.* at ¶ 7.

[7] *Id.* at ¶ 10.

[8] *Id.* at ¶ 11.

[9] *Id.* at ¶ 12.

[10] *Id.* at ¶ 17.

[11] *Id.*

***B. Procedural Background***

Plaintiffs filed the complaint in this particular action on July 13, 2012.[12] Lexington filed the pending motion to dismiss on September 24, 2012.[13] On October 30, 2012, Plaintiffs filed an opposition.[14] With leave of Court, Lexington filed a reply on November 7, 2012.[15] On January 7, 2013, this matter was consolidated with Civil Action No. 12-1026.[16]

## II. Parties' Arguments

In support of the pending motion, Lexington first argues that Missouri law is applicable to Plaintiffs' claims.[17] Lexington explains that in diversity actions, a federal court must apply the forum state's choice of law rules.[18] Under Louisiana Civil Code article 3515, choice of law is determined by the state whose policies would be most seriously impaired if its laws were not applied to the case by examining (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate system and international systems including policies of upholding the justified expectations of the parties and of minimizing the adverse consequences that might follow from subjecting a party to the laws of more than one state.

Under this analysis, Lexington contends that Missouri law should be applied. Lexington characterizes Plaintiffs' claims as residing in tort and "only seeking extra-contractual punitive

---

[12]  *Id.*

[13]  Rec. Doc. 23 (referring to master docket).

[14]  Rec. Doc. 24.

[15]  Rec. Doc. 25.

[16]  Rec. Doc. 21.

[17]  Rec. Doc. 23-1 at p. 5.

[18]  *Id.* (citing *Guaranty Nat'l Ins. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir. 2000)).

damages."[19] Lexington argues that Plaintiffs are not seeking damages for breach of contract because Lexington has already paid the policy limits, as admitted in the complaint. Instead, Lexington argues that Lousiana courts have treated "extra-contractual bad faith claims as delictual or tort claims."[20] Lexington further argues that Louisiana choice of law rules specifically set forth the factors to be considered when determining which state's policies would be most seriously impaired by not applying its laws in a delictual action: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.[21]

Lexington explains that the events giving rise to the dispute, tornados, and the resulting damage, occurred in Joplin, Missouri, as well as the inspection, investigation, and adjustment of the insurance claim. Additionally, Lexington argues that the alleged damage of not being able to operate these two restaurants "undeniably occurred in Missouri." Therefore, Lexington asserts that Missouri law is applicable.[22]

Alternatively, Lexington argues that if Louisiana Civil Code article 3543 applies, which governs conflict of laws for conduct and safety, that Missouri law should still apply. This code article states that conduct and safety issues are governed by the law of the state in which the conduct

---

[19] *Id.*

[20] *Id.* at pp. 5-6 (citing *Lundy Enters., L.L.C. v Wausau Underwriters Ins.*, 2009 WL 5217412, at * 7 (E.D. La. Dec. 30, 2009)).

[21] *Id.* at p. 6 (citing La. C.C. art. 3542).

[22] *Id.*

that caused the injury, which in this case in Missouri.[23] Moreover, Lexington claims that public policy considerations strongly support a decision to apply Missouri law; Lexington further explains that Missouri law places limitations on the recovery of punitive damages in situations like this, and that "Plaintiffs' decision to file suit in Louisiana is clearly an effort to secure a hearing in a venue that the Plaintiffs perceive as favorable to their position under law that, arguably, affords a more liberal opportunity to obtain an award of punitive damages."[24]

Lexington avers that under Missouri law, Plaintiffs cannot recover punitive damages for the claims they have asserted. Lexington argues that "Plaintiffs have not stated a claim for relief for vexatious refusal to pay under Missouri law because they have no claim for any contractual recovery."[25] Lexington maintains that because it paid the full policy limits, Missouri law would not allow for punitive damages; under Missouri law, Lexington contends, punitive damages are only available when an insurance company has refused to pay the full amount under the policy. Lexington quotes Missouri's bad faith statute:

> In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.[26]

---

[23] *Id.* at pp. 6-7.

[24] *Id.* at p. 7.

[25] *Id.* at p. 8.

[26] Mo. Ann. Stat. § 375.420 (West 2000).

In addition, Lexington argues that Missouri courts have held that the vexatious refusal to pay statutes are penal and should be strictly construed,[27] and that a claim for punitive damages does not provide a plaintiff with an independent action.[28] Lexington emphasizes that punitive damages are only available "in addition" to the amount owed under the contract or the amount of the loss.[29] Lexington argues that Missouri is not alone in prohibiting claims for vexatious refusal to pay damages in bad faith claims absent an underlying claim for policy proceeds.[30] Therefore, Lexington asserts that because Plaintiffs admit in the complaint that the policy proceeds have been paid, the only action they could bring is for vexatious refusal to pay and attorney's fees, but that Missouri law prohibits such a claim absent an underlying claim for policy proceeds.[31]

In opposition, Plaintiffs argue that Louisiana law should govern the claims asserted in the complaint. While Plaintiffs acknowledge that a federal court sitting in diversity is to apply the forum state's choice of law rules, they also contend that "'if the laws of the states do not conflict, then no choice-of-law analysis is necessary' and the law of the forum state should be applied."[32] Therefore, Plaintiffs claim that because "[t]he laws of Louisiana and Missouri are substantially similar with

---

[27] Rec. Doc. 23-1 at p. 8 (citing *State ex rel. United States Fidelity & Guaranty Co. v. Walsh*, 540 S.W.2d 137, 141 (Mo. Ct. App. 1992)).

[28] *Id.* (citing *Landum v. Livingston*, 394 S.W.2d 573, 578 (Mo. Ct. App. 1965)).

[29] *Id.* at p. 9 (citing Mo. Ann. Stat. §§ 375.296, 372.420).

[30] *Id.* n. 30.

[31] *Id.* at pp. 10-11.

[32] Rec. Doc. 24 at p. 5 (citing *Rainbow USA, Inc. v. Nutmeg Ins. Co.,* 612 F.Supp. 2d 716, 725 (E.D. La. 2009)(quoting *Schnedier Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002))) (internal quotations omitted).

respect to the determinative issues in this case, [] this Court should apply the law of the forum state, Louisiana."[33]

Further, Plaintiffs argue that both Louisiana and Missouri law provide that an insured may recover statutory damages for an insurer's bad faith refusal to timely pay or adjust claims.[34] Plaintiffs also refute Lexington's contention that Missouri law places limits on the recovery of penalties when the insurer has paid the policy limits, and claim that in *Dhyne v. State Fire & Casualty Co.*,[35] the Missouri Supreme Court rejected the position Lexington takes here.

Regardless, Plaintiffs argue that under a Louisiana choice of law analysis, Louisiana law should apply. Plaintiffs explain that the insurance agreement covered thirty restaurants in five different states: "The Plaintiffs have no other presence or connection to Missouri other than the two (2) restaurants in Joplin, Missouri[,] both of which are permanently closed."[36] In addition, Plaintiffs emphasize that each plaintiff is a Louisiana limited liability company, and the insurance agreement was delivered in Jefferson Parish, Louisiana.[37] Further, all policy premiums were paid from the NOLA Ventures headquarters in Metairie, Louisiana to Lexington, and all payments due to Plaintiffs under the policy were paid to that location. Plaintiffs also state that Lexington, while a foreign insurance company, is authorized to do business within Louisiana. Therefore, Plaintiffs argue that Louisiana has a stronger connection to this dispute than Missouri.[38]

---

[33] *Id.*

[34] *Id.* at p. 7, n. 24.

[35] 188 S.W. 3d 454 (Mo. 2006).

[36] Rec. Doc. 24 at p. 9.

[37] *Id.*

[38] *Id.* at pp. 9-10.

Additionally, Plaintiffs argue that Article 3542, which Lexington relies on, is not applicable in this case; instead, Plaintiffs contend that Article 3537, which governs obligations, is the most applicable choice of law statute to its claims.[39] Plaintiffs claim this article is more applicable because the "claims arise out of, are derivative of, and dependant upon the underlying contractual obligation between the Plaintiffs and Lexington."[40] Article 3537 reads:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

Plaintiffs highlight that all three plaintiffs are Louisiana limited liability companies, the policy was delivered in Louisiana, the payments (performance) in the form of premiums was paid by NOLA Ventures out of Louisiana, and payment (performance) by Lexington was to be paid to NOLA Ventures in Louisiana.[41] Plaintiffs claim that courts have consistently held that where an insurance policy was delivered determines the applicable state law under Louisiana's choice of law rules.

---

[39] *Id.*

[40] *Id.*

[41] *Id.* at pp. 11-12.

Plaintiffs claim that this rule applies even when the insurance contract covers properly in multiple states, as is the case here.[42]

Assuming that Louisiana law is applicable, Plaintiffs contend that they have stated a claim under that state's laws. Specifically, Plaintiffs invoke Louisiana Revived Statute § 22:1892, which states:

> All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.

Plaintiffs also invoke Louisiana Revised Statute § 22:1973, which states:

> A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:
>> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

Plaintiffs claim that reading the complaint in the light most favorable to them, they have stated a claim for relief under Louisiana law.[43]

However, in the alternative, Plaintiffs aver that they have stated a valid claim under Missouri law. Here, Plaintiffs explain why they believe Lexington incorrectly states that under Missouri law

---

[42] *Id.* (citing *In re FEMA Formaldehyde Prods. Liab. Litig.*, 780 F.Supp. 2d 514, 522-23 (E.D. La. 2011)).

[43] *Id.* at p. 14.

9

a plaintiff does not have a cause of action for additional amounts once the policy proceeds have been paid in full. Plaintiffs contend that in *Dhyne*, the Missouri Supreme Court rejected this position and reasoned that such a construction of the law "would permit an insurance company to refuse payment and avoid liability under section 375.420 by simply paying prior ro trial. Such an interpretation would, from a practical standpoint, eliminate section 375.20."[44]

Plaintiffs also reject Lexington's reliance on *State ex rel. United States Fidelity & Guaranty Co. v. Walsh*,[45] to claim that once a judgment is satisfied, no additional charges are owed, claiming that it was superseded and overruled by *Dhyne*.[46] Further, Plaintiffs analogize the present case to *Victor v. Manhatten Life Ins. Co.*,[47] where a Missouri appellate court allowed a plaintiff to proceed on a vexatious delay action for life insurance proceeds even where the proceeds were paid before the suit was initiated. Plaintiffs explain that the court reasoned that a delay to promptly pay caused a "loss of use", and was therefore distinguishable from the penalty damages precluded in *Walsh*. Plaintiffs assert that in the complaint they seek recovery for loss of use, and therefore have satted a claim upon which relief may be granted.[48]

In reply, Lexington argues that Plaintiffs claims must be in tort, not in contract as they now allege.[49] Lexington reiterates that Plaintiffs have conceded in the complaint that the policy proceeds were paid before suit was filed, and claims that both Louisiana and Missouri courts have held that

---

[44] *Id.* at p. 14 (quoting *Dhyne*, 188 S.W. 3d at 456).

[45] 540 S.W. 2d 137 (Mo. Ct. App. 1976).

[46] Rec. Doc. 24 at pp. 16-17.

[47] 772 S.W. 2d 826 (Mo. Ct. App. 1989).

[48] Rec. doc. 24 at p. 18.

[49] Rec. Doc. 24 at p. 1.

"payment of an insurance policy's limits of liability relieves the insurer of any further contractual obligation to the insured."[50] Lexington argues that this means that once policy proceeds have been paid, the insured no longer has a claim for breach of the policy contract. Therefore, Lexington contends that as a matter of law, Plaintiffs' cause of action cannot be based in contract.

Instead, Lexington argues that Plaintiffs claims can only be construed as one based in tort, for breach of duties imposed by statute and outside the scope of the insurance policy.[51] Therefore, Lexington maintains that the only relevant question is whether it "satisfied its statutory obligation to pay the claim within a certain period of time."[52] As such, Lexington avers that Plaintiffs reliance of Louisiana Civil Code article 3537 and the cases interpreting this article are "misplaced" when applied to the facts of this case, because Plaintiffs' cause of action is not, as a matter of law, based in contract.[53]

In addition, Lexington challenges Plaintiffs' assertion that Louisiana law should apply because there is no conflict between the laws of Missouri and Louisiana on this issue. Lexington maintains that "[w]hile it is true that both Missouri and Louisiana allow an insured to recover damages in an effort to encourage insurance companies to timely pay their claims, the two states employ vastly different statutory schemes and penalties to accomplish this goal.[54] Lexington explains that "Louisiana's penalties are considerably higher and are available with a much less

---

[50] *Id.* at p. 2 (citing *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 421 (La. 1988); *Millers Mut. Ins. Ass'n of Ill. v. Shell Oil Co.*, 959 S.W. 2d 864 (Mo. Ct. App. 1997)).

[51] *Id.*

[52] *Id.*

[53] *Id.* at p. 3.

[54] *Id.*

stringent showing than Missouri's penalties."[55] Therefore, Lexington argues that this Court must perform a choice of law analysis.

Finally, Lexington disputes Plaintiffs' argument that *Dhyne* held that even in the absence of any contractual claims, a plaintiff has a valid claim for extra-contractual damages. Lexington attempts to distinguish *Dhyne* by pointing out that in that matter, the insurer only paid the policy proceeds several months after suit was filed, whereas here the proceeds were paid before suit was filed.[56] Lexington claims that the "court found that this delay warranted a claim for penalties even without a breach of contract claim because the insured was forced to file suit and incur attorneys [sic] fees in order to make the insurer pay her claim."[57] As such, Lexington claims that *Dhyne* did not overrule *Walsh,* and argues that a "2012 Missouri Practice Series article favorably cites *Walsh* for the proposition that under Missouri law, if the amount of the loss has been paid or recovered in a judgment, there is no basis for the recovery of vexatious damages in an action subsequently instituted." [58]

### III. Standard on a Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[59] "A motion to dismiss on the basis of the pleadings alone should rarely be granted."[60] Although a court

---

[55] *Id.* at p. 4.

[56] *Id.* at p. 4.

[57] *Id.* (citing 188 S.W. 3d at 457).

[58] *Id.* at p. 5, n. 14.

[59] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[60] *Madison* v. *Purdy*, 410 F.2d 99, 100 (5th Cir. 1969).

must accept the factual allegations in the pleadings as true, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.[61] "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[62] Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.[63]

## IV. Law and Analysis

### A. Choice of Law

#### 1. Whether a Choice of Law Analysis is Necessary

Before this Court can analyze the substantive legal claims at issue in this case, it must determine the applicable law. As both parties have acknowledged, as a court sitting in diversity, this Court must apply the choice of law rules of the forum state, Louisiana.[64] However, Plaintiffs claim that a choice of law analysis is unnecessary because "the laws of Louisiana and Missouri are substantially similar with respect to the determinative issues in this case."[65] In *Schneider National Transport v. Ford Motor Company*,[66] the Fifth Circuit held that a choice of law analysis was unnecessary when the competing states' laws did not conflict on the matter before the court. The disputed issues concerned the interpretation of an insurance contact. The Fifth Circuit acknowledged

---

[61] *Doe*, 528 F.3d at 418 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[62] *Drs. Bethea, Moustoukas & Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 n. 7 (5th Cir. 2004).

[63] *Twombly*, 550 U.S. at 555-56.

[64] *Guaranty Nat'l Ins.*, 211 F.3d at 243.

[65] Rec. Doc. 24 at p. 5.

[66] 280 F.3d 532 (5th Cir. 2002).

that both "the laws of Pennsylvania and Texas are all in accord insofar as the issues before the Court are concerned," because both states required the contract to be interpreted according to the contract's plain meaning, and therefore a choice of law analysis was not needed.[67]

In *Schneider*, regardless of the state law applied, the result would be identical to the claims at issue. Here, Plaintiffs do not claim the two states' laws are identical, but rather use the nebulous phrase that the laws are "substantially similar." However, as highlighted by Lexington, there are significant differences between Missouri and Louisiana on the issues before this Court. Aside from the differences in availability of the damages Plaintiffs seek under the two states' statutory regimes, Missouri imposes a discretionary penalty of 10% on claim amounts in excess of $1,500.[68] In contrast, Louisiana imposes a mandatory penalty as high as 50%.[69]

This matter is distinguishable from *Schneider*, because the application of Louisiana or Missouri law to Plaintiffs' claims will have significant implications on the availability and amount of relief Plaintiffs may receive. In *Schneider*, the choice of law analysis would not have effected the outcome of the claims in any way. Here, there are substantive differences between the laws of Louisiana and Missouri on the issues before the Court. Therefore, this Court must perform a choice a law analysis.

---

[67] *Id.* at 536.

[68] Mo. Ann. Stat. § 375.420.

[69] Rec. Doc. 26 at p. 4.

14

2. Choice of Law Analysis

As stated above, a federal court sitting in diversity must apply the forum state's choice of law rules. A district court's choice of law determination is reviewed *de novo*.[70] The Fifth Circuit "give[s] no deference to the district court's determination of state law."[71]

While both parties acknowledge that Louisiana's choice of law rules apply, at the onset they dispute which specific provision is applicable to Plaintiffs' claims. Lexington advocates that Article 3542, which applies to delictual or tortious actions, should apply to the claims in this case. Plaintiffs contend that Article 3537, which determines choice of law relating to contracts, should apply.

In support of its position, Lexington has argued that both Louisiana and Missouri law have recognized that payment of policy proceeds satisfies all of the obligations under a contract. Defendant cites *Pareti v. Sentry Indemnity Co.*,[72] where the Louisiana Supreme Court acknowledged that "[i]t is self-evident that an insurer which has settled for its policy limits (or paid its full limits responsive to a judgment) has 'exhausted' its limit of liability under the policy."[73] In essence, Lexington argues that because an interpretation of the policy contract is not necessary to resolve Plaintiffs' claims and Plaintiffs seek statutory damages, the choice of law provisions concerning contracts or obligations are inapposite.

---

[70] *Abraham v. State Farm Mut. Auto. Ins.*, 465 F.3d 609, 611 (5th Cir. 2006).

[71] *Cain v. Altec Indus.*, 236 F. App'x 965, 967 (5th Cir. 2007).

[72] 536 So. 2d 417 (La. 1988).

[73] *Id.* at 421.

However, in *Abraham v. State Farm Mutual Automobile Insurance Company*,[74] the United States Court of Appeals for the Fifth Circuit applied Article 3537 to an analogous situation. In *Abraham*, the plaintiff was involved in an automobile accident with an uninsured driver in Louisiana. The plaintiff's policy was issued in Mississippi, by a Mississippi agent.[75] The plaintiff filed suit for payment. The plaintiff sought statutory penalties and attorney's fees against the insurance company. Prior to trial the insurance company paid the policy limits plus interest and as a result only a claim for bad faith remained.[76] The district court determined that Louisiana substantive law applied under Louisiana's choice of law provisions. The Fifth Circuit reversed this finding, but nonetheless found that Article 3537 was applicable.[77]

Here, similar to the dispute in *Abraham*, the dispute arose out a contractual agreement, but the plaintiff did not seek an action for breach of contract and only sought statutory damages pursuant to state law. Therefore, it appears that the Fifth Circuit has rejected Lexington's argument that Article 3537 is only applicable when the contract determines the remedy or the contract's interpretation is subject to state law and in dispute. This Court finds the nature of the claims in *Abraham* analogous to the present mater . Therefore, this Court will follow the Fifth Circuit's precedent and apply Article 3537 to this action.

Now that this Court has determined that Article 3537 is applicable, the Fifth Circuit's analysis in *Abraham* is particularly instructive. In analyzing the competing states' connections to the

---

[74] 465 F.3d 609 (5th Cir. 2006).

[75] *Id.* at 610.

[76] *Id.*

[77] *Id.* at 611.

dispute under Article 3537, which incorporates the considerations of Article 3515, the Fifth Circuit noted that the plaintiff was a Mississippi resident, the insurance contract was formed in Mississippi, the vehicle was registered in Mississippi, and the insurance policy was a Mississippi contract.[78] In contrast, the Louisiana Department of Public Safety responded to the accident, the case involved both Louisiana state and federal courts, and the plaintiff received medical attention in Louisiana. Upon these factors, the Fifth Circuit held that Mississippi law applied because the state's "policy interest in upholding the justified expectations of the parties to Mississippi insurance contracts" outweighed Louisiana's competing interests.[79]

Here, Louisiana has many of the same connections to this dispute as did Mississippi in *Abraham*, and therefore the application of Louisiana's substantive law is appropriate. All three plaintiffs are Louisiana limited liability companies, whose members are each citizens of Louisiana.[80] Therefore, Plaintiffs are all Louisiana citizens.[81] Additionally, the policy was delivered in Louisiana, and premium payments were always paid from Louisiana. Furthermore, the policy proceeds were paid by Lexington to Plaintiffs in Louisiana. In contrast, Missouri's only connection to this dispute is that it was the location of the damage, where some of Plaintiffs restaurants were located. In *Abraham*, the Fifth Circuit found the location of the accident to be insufficient to trigger the application of a state's laws. As such, this Court finds that here Louisiana's interests would be most

---

[78] *Id.* at 612-13.

[79] *Id.* at 614.

[80] Rec. Doc. 1. This citation references the separate docket for Civil Action No. 12-1834.

[81] *Harvey v. Grey Wolf Drilling, Co.*, 542 F.3d 1077 (5th Cir. 2008).

negatively affected by not applying its laws, and therefore, Louisiana substantive law applies to this dispute.

**B. Failure to State a Claim**

Now that it is established that Louisiana law is applicable to Plaintiffs' claims against Lexington, the only remaining question is whether under Louisiana law Plaintiffs have stated a claim upon which relief can be granted. Lexington has already conceded that if Louisiana law is applied, Plaintiffs have stated a claim: "Louisiana law arguably permits the plaintiff to recover similar punitive damages without the need for a valid claim to policy proceeds."[82] As the viability of Plaintiffs's claims against Lexington under Louisiana law is not in dispute, the Court will deny the pending motion.

## V. Conclusion

For the reasons stated above, this Court finds that Louisiana law applies to Plaintiffs' claims against Lexington. Furthermore, Lexington has conceded that Plaintiffs have stated a cause of action under Louisiana law. Accordingly,

**IT IS HEREBY ORDERED** that Lexington's Motion to Dismiss[83] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this  19th day of March, 2013.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[82] Rec. Doc. 23-1 at p. 2 (Lexington's memorandum in support of the pending motion).

[83] Rec. Doc. 23.

18